IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE L. OWENS, 168046, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) Case No. 23-cv-112-DWD |
| STEPHANIE HARSEY, HUGHES LOCHARD, ANTHONY SKOBEL, | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Deandre L. Owens, a detainee or inmate at the Jefferson County Justice Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 concerning medical care that he sought and received at the Franklin County Jail ("the Jail"). Defendants Lochard and Harsey have filed a Motion for Summary Judgment (Doc. 45) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff responded. (Doc. 50). The evidence supports Plaintiff's contention that he exhausted administrative remedies so the Motion will be denied.

## BACKGROUND

Plaintiff arrived at the Franklin County Jail on October 3, 2022, and immediately began efforts to inform staff of his need for care and special shoes for a past leg injury from a gunshot wound. (Doc. 1 at 6). The Jail nurse was not available on the day Plaintiff

arrived, so he was instructed to place a nurse call slip.  When he eventually saw the nurse, Plaintiff notified her of his need for special shoes, but she indicated that his request had already been denied by the doctor and refused to do anything further.  Plaintiff made ongoing efforts to get the care he needed, which included repeatedly contacting Jail Administrator Anthony Skobel about his needs.  He also showed Skobel that his knee became swollen without medical attention or the requested shoes.  Plaintiff faulted Dr. Lochard and Nurse Harsey for refusing to adequately address his situation, refusing him his shoes, and otherwise refusing to consult a specialist about his situation.  (Doc. 1 at 6).

Based on the allegations in the Complaint, which are more fully recounted in the Order of Initial Review (Doc. 11), the Court designated two claims:

> **Claim 1:** Eighth or Fourteenth Amendment deliberate indifference claim against Defendants Harsey and Lochard for refusing or failing to examine or treat Plaintiff's medical needs with relation to the nerve damage in his left leg;
>
> **Claim 2:** Eighth or Fourteenth Amendment deliberate indifference claim against Defendant Skobel for his handling of Plaintiff's grievances about his medical issue.

(Doc. 11 at 3).

The Defendants have moved for summary judgment, and in support of their motion they have submitted the Jail handbook and Plaintiff's relevant grievance documentation.   (Docs. 45, 45-1, 45-2). Plaintiff has responded with grievance documentation, as well as many medical request slips.  (Doc. 50).

## FINDINGS OF FACT

The Franklin County Jail handbook describes the grievance process as follows:

> You must try to resolve problems with staff or inmates before filing a grievance form. Residents are allowed to file a grievance when subjected to a criminal act by another inmate, a prohibited act by a staff member, abuse, harassment, violation of civil rights, or denied privileges without just cause as specified in this handbook while in custody of the Franklin County Jail.

(Doc. 45-1 at 13).

The handbook also sets forth the parameters for medical care at the Jail. (Doc. 45-1 at 7-8). It provides that each detainee will receive a free medical screening/evaluation within 14 days of intake, and that follow-up to that intake or emergency medical care will be free. (Doc. 45-1 at 7). If a resident desires medical care, he is supposed to submit a sick call request to be seen by the nurse. If a detainee becomes suddenly ill, they may also request prompt medical attention from correctional staff. If a detainee is sent to an outside provider or specialist for a pre-existing condition, they may be required to pay for the visit. No inmate will be refused care if they do not have the money to pay for services. (Doc. 45-1 at 8).

On October 4, 2022, Plaintiff submitted an electronic medical request that stated, "I would like to be seen for my nerve damaged issue n my leg." (Doc. 50 at 5). The nurse responded from a generic address, "nurse medical," that Plaintiff could be seen on sick call for $10. (*Id.*). On October 6, 2022, Plaintiff submitted a grievance to Skobel wherein he explained that he arrived on October 3, 2022, but the nurse was not on duty that day. (Doc. 50 at 3). He further explained he submitted a sick call to be seen for nerve damage in his leg, but the nurse told him he had to pay $10 to be seen. He asked Skobel if he

could have the fee waived because the nurse had not been on duty when he arrived. (Doc. 50 at 3).

On October 28, 2022, Plaintiff submitted another grievance wherein he asked to go to an outside hospital. He explained that he had seen the nurse and that his requests were being denied every time. (Doc. 50 at 15). He further alleged that without any care his nerve damage was getting worse. (*Id.*). Plaintiff continued to submit grievances in October, November, and December of 2022. Amongst those, on November 16, 2022, Plaintiff informed Skobel that he had informed the nurse about pain and swelling in his left knee, and Skobel responded that he would "consult with her and see where we are at." (Doc. 45-2 at 6). On November 23, 2022, Plaintiff informed Skobel that the nurse had agreed that his special shoes could be released to him from his property, and he asked Skobel to follow-up on it. (Doc. 45-2 at 8). On November 29, 2023, Plaintiff asked for the names of the nurse and doctor (Doc. 45-2 at 12), and on December 8, 2022, Skobel informed him the doctor was Hughes Lochard, and the nurse was Stephanie Harsey (Doc. 45-2 at 14).

On December 8, 2022, Plaintiff placed another medical request wherein he stated, "since my last complaint on November 28, 2022, I was not seen by a nurse or doctor and I am still [h]aving the same pains and swelling in my leg knee and foot. I need to see a doctor or specialist." (Doc. 50 at 17).

On December 20, Plaintiff submitted another grievance wherein he indicated that he had been trying to get his outside medical records released to the facility, but that the doctor and nurse indicated they did not want to see the records. He indicated that a new

nurse had observed the large swelling in his left knee and difficulty ambulating, so she put him on the doctor's list. (Doc. 45-2 at 15). Skobel indicated that he would talk to the doctor and nurse about Plaintiff's medical records. (*Id.*). Finally on December 27, 2022, Plaintiff indicated that the doctor saw him, and when he saw his condition he approved the special shoes. (Doc. 45-2 at 16). Skobel indicated he would make sure Plaintiff got his shoes on December 28, 2022. (*Id.*).

Plaintiff also supplied medical records that confirmed he previously suffered gunshot wounds to his legs. (Doc. 50 at 24-38).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to

exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate or detainee at the Franklin County Jail, Plaintiff was required to follow the grievance procedure set forth in the Jail's handbook. That procedure requires an inmate to first attempt to resolve an issue informally by speaking to staff, and it then allows him to file a grievance. (Doc. 45-1 at 13).

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing. Plaintiff does not dispute that he was familiar with the grievance process, nor does he contend he was unable to use it. Thus, the sole issue for determination is if Plaintiff properly used the grievance procedure concerning his claims against Defendants Harsey and Lochard.

The Defendants contend Plaintiff did not engage in the proper first step to informally resolve his issues, but they do not have any specific evidentiary support for this contention. Plaintiff counters that he made his first attempt at informal resolution when he arrived at the Jail and told intake staff he had medical issues with his leg and required special shoes. He further contends, and has provided proof, that on multiple occasions he submitted sick call requests. The sick call requests are the mechanism the Jail handbook providers for an inmate to address medical issues, so the Court finds that Plaintiff's sick call slips are proof that he first tried an 'informal resolution' as required by the Jail handbook. Plaintiff also alleged in his complaint that he physically showed Skobel his swollen leg at one point, which could be considered another informal attempt to seek care. Given this evidence, the Court finds Plaintiff satisfied the first step of exhaustion at the Jail by seeking informal resolutions.

The Defendants also contend that Plaintiff's grievances are deficient because they are not identified by name in the grievances. Neither the Jail handbook nor the PLRA explicitly require that a grievance contain the names of parties complained about. Instead, the point of the PLRA exhaustion requirement is to notify the prison or jail of an

inmate's issue so that there is a chance to resolve the issue short of litigation. Even in scenarios where a grievance process requires an inmate to include a name (such as the process used in the Illinois Department of Corrections), an inmate is still considered to have exhausted if he provides sufficient information to identify the subjects of his complaints, and the issues he needs resolved. *See e.g., Maddox v. Love*, 655 F.3d 709, 720-22 (7th Cir. 2011) (finding that a grievance that omitted the names of prison administrators was still sufficient for exhaustion purposes where it clearly gave the prison notice of an issue and a chance to fix it); *see also, Byrd v. Fenoglio*, 2014 WL 1127305 at *3 (S.D. Ill. Mar. 21, 2014) (finding that an inmate's grievance was sufficient to exhaust where there was only one male medical employee and his grievance spoke clearly of his encounters with the sole male medical employee); *Glick v. Walker*, 385 Fed. App'x 579, 582 (7th Cir. 2010) (finding that an inmate's grievance that described prison employees, but did not name them, was sufficient because it still gave the prison a fair opportunity to address the issues grieved).

Plaintiff repeatedly grieved his interactions with the "nurse" and the "doctor" at the Jail to Skobel. There never seemed to be a question from Skobel about who Plaintiff was referencing. Indeed, eventually in late November of 2022 Plaintiff asked for the names of the nurse and the doctor, and Skobel answered unequivocally—Hughes Lochard and Stephanie Harsey. Particularly with Skobel's confirmation that the nurse and doctor overseeing Plaintiff's care were Lochard and Harsey, it cannot reasonably be said that Plaintiff's grievances failed to give the Jail notice of the issues he was having

and the redress he sought. As such, the Court finds that Plaintiff's grievances at the jail were adequate to exhaust his claims against Hughes and Lochard.

Finally, Defendants contend that Plaintiff's grievances, and the allegations in his complaint, were too "vague" to demonstrate exhaustion. The Court disagrees. Plaintiff's complaint was remarkably short and concise for an individual with no formal legal training, and it contained all the relevant facts that one might hope for from a pro se litigant. Without legal or medical expertise, it's hard to imagine what more Plaintiff might have included to describe his situation without making the waters murky. Plaintiff arrived at the Jail in October of 2022, and he tried repeatedly over the course of at least three months to secure care or the shoes that he believed he needed for his left leg issues. As time passed, his pain and other physical symptoms worsened, until eventually in late December of 2023 he was apparently approved to possess his shoes. This is all that Plaintiff needed to put forth at the initial stage of drafting a complaint, and he needed nothing more that what he has provided to tie his grievance efforts to these allegations.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Third Motion for Recruitment of Counsel. (Doc. 51). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff still has not provided any proof that he has attempted to

recruit counsel on his own. He contends that he needs appointed counsel because the Jail has made it difficult for him to transmit correspondence about this matter via fax or letter, or to get copies or stamps. While the Court is sympathetic to the many hurdles faced by those litigating while confined, it does not find that at this point the complexity of the case exceeds Plaintiff's abilities, or that the difficulties he describes warrant appointing counsel. Plaintiff's complaint was short and clear, he prepared and submitted a concise and successful response to the Defendants' Motion for Summary Judgment, and he has also filed other relevant motions in this case. The next steps will be guided by the merits scheduling order that will issue shortly. If Plaintiff wishes to renew his request for counsel later, he must provide proof of his attempts to contact at least three attorneys for representation, and he must also specifically describe what aspects of the case are too difficult for him to manage.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion (Doc. 45) is **DENIED**. Plaintiff's Motion for Status (Doc. 52) concerning his Response (Doc. 50) is **GRANTED**. The response was received and considered in the preparation of this Order.

Plaintiff's Third Motion for Recruitment of Counsel (Doc. 51) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: April 5, 2024

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge