**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DEANDRE L. OWENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23-cv-112-DWD** |
| | ) | |
| **STEPHANIE HARSEY, HUGHES LOCHARD, and ANTHONY SKOBEL,** | ) | |
| | ) | |
| **Defendants.** | | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Plaintiff Deandre L. Owens brings this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights allegedly occurring when he was a pre-trial detainee at the Franklin County Jail. Specifically, he alleges that he was denied appropriate medical care while he was in detention at the Franklin County Jail. The medical defendants, Dr. Hughes Lochard and Stephanie Harsey, have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 71). Additionally, non-medical defendant Anthony Skobel has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 73). Plaintiff has responded to both motions (Docs. 76 and 77), and Defendants have replied (Docs. 78 and 79).[1]

[1] Plaintiff also filed sur-replies. (Docs. 80 and 81). The Local Rules of this Court provide that "[u]nder no circumstances will sur-reply briefs be accepted" and prior to filing a supplement, a party must first seek leave of the court. SDIL-LR 7.1(a)(4),(6). Because sur-reply briefs are prohibited and Plaintiff did not seek leave to file a supplemental pleading, the Court will not consider Plaintiff's sur-replies.

For the reasons set forth below, the Court **GRANTS** Defendants' motions for summary judgment.

## I. Background

Plaintiff filed this action under 42 U.S.C. § 1983 alleging inadequate medical care while he was a pretrial detainee at the Franklin County Jail. In his Complaint, Plaintiff claims that after arriving at Franklin County Jail, he informed staff he suffered from nerve damage in his left leg from a past injury and that he required special Velcro shoes to alleviate weight and pressure on his injured leg. (Doc. 11). Plaintiff claims that Defendants Harsey, a nurse, and Hughes, a physician, violated his rights by refusing his medical needs and preventing him from seeing a specialist. He further alleges that Defendant Skobel, a lieutenant at the facility, mishandled the grievances he submitted regarding the handling of his medical issue.

Upon preliminary review of the Complaint, Plaintiff was allowed to proceed on the following claims:[2]

Claim 1: Fourteenth Amendment claim against Defendants Harsey and Lochard for refusing or failing to examine or treat Plaintiff's medical needs with relation to the nerve damage in his left leg; and

Claim 2: Fourteenth Amendment claim against Defendant Skobel for his handling of Plaintiff's grievances about his medical issue.

[2] The screening order designated the claims as arising under the Eighth or Fourteenth Amendment, noting: "It is not clear from Plaintiff's Complaint if he is at the Franklin County Jail as a pretrial detainee, if he is facing a parole revocation, or if he has been convicted and is awaiting transfer to a prison facility." (Doc. 11, pg. 1 n. 1). The parties now agree that Plaintiff was a pretrial detainee during the relevant time period. As such, his claims arise under the Fourteenth Amendment.

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).

The moving party bears the initial burden of demonstrating why no trial is necessary. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). It may do so either by presenting affirmative evidence negating an essential element of the nonmovant's claim or by showing an absence of evidence to support that claim. *Modrowski*, 712 F.3d at 1169; *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016).

Once the movant meets this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, supported by admissible evidence, showing a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322–24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Conclusory allegations, unsupported by specific facts" are insufficient. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The nonmoving party must produce

evidence establishing each element on which it bears the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995).

In ruling on the motion, the Court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party and resolves any doubts in its favor. *Hansen v. Fincantieri Marine Grp.*, 763 F.3d 832, 836 (7th Cir. 2014); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Bunn*, 753 F.3d at 681. The Court does not weigh evidence, resolve credibility issues, choose between competing inferences, or decide the truth of the matters presented. *Anderson*, 477 U.S. at 248; *Hansen*, 763 F.3d at 836.

A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008).

**B. Standard Applicable to Pretrial Detainee/Medical Claim**

Defendants Harsey and Lochard acknowledge that, because Plaintiff was a pretrial detainee during the relevant time period, Seventh Circuit precedent provides that his medical-care claims are governed by a standard of objective reasonableness under the Fourteenth Amendment's Due Process Clause. *See Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018). They argue, however, that "[i]t is time for the Courts to overrule" this precedent. (Doc. 71, pg. 14). Specifically, they contend that *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), was limited to excessive-force claims; that the Seventh Circuit's extension of *Kingsley* to medical care in *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), *McCann v. Ogle County*, 909 F.3d 881 (7th Cir. 2018), and *Pittman v. Madison County*, 108 F.4th 561 (7th Cir. 2024), is at odds with the Due Process Clause; and that the correct

measure of a medical professional's liability is the "professional judgment" standard of *Youngberg v. Romeo*, 457 U.S. 307 (1982).

The request to overrule Seventh Circuit precedent is denied. This Court is bound by *Miranda*, *McCann*, and *Pittman*. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (district courts must follow circuit precedent). Whether *Kingsley* was correctly extended to medical-care claims, and whether those decisions should yield to *Youngberg*, are questions for the Court of Appeals or the Supreme Court. They are not questions to be resolved by this Court.

Therefore, the governing standard is the one prescribed by the Seventh Circuit. Because Plaintiff was a pretrial detainee, his medical-care claims arise under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *Miranda*, 900 F.3d at 350–52. After *Kingsley*, those claims are evaluated under an objective-reasonableness inquiry. *Id.* at 352–54; *McCann*, 909 F.3d at 886; *Pittman*, 108 F.4th at 570. A pretrial detainee need not prove that the defendant was subjectively aware of a substantial risk of harm. *Pittman*, 108 F.4th at 570.

The inquiry has two parts. First, the plaintiff must show that the defendant acted purposefully, knowingly, or recklessly in the course of treatment or in declining to treat. *Miranda*, 900 F.3d at 353–54; *McCann*, 909 F.3d at 886. Negligence and even gross negligence do not satisfy that requirement. *Miranda*, 900 F.3d at 353–54; *see Kingsley*, 576 U.S. at 396 (negligently inflicted harm is categorically beneath the threshold of constitutional due process). Second, the plaintiff must show that the challenged conduct was objectively unreasonable. *Miranda*, 900 F.3d at 354. "This standard requires courts to

focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann*, 909 F.3d at 886. The standard is not applied mechanically; it turns on the facts of the particular case. *Kingsley*, 576 U.S. at 397. A detainee's disagreement with the provider's chosen course of treatment does not, standing alone, establish that the course of treatment was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019).

## III. PLAINTIFF'S RESPONSIVE PLEADINGS

Defendants' summary judgment motions include a Statement of Material Facts with proper citation to the record. Plaintiff's responsive pleadings did not comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1(b) because Plaintiff did not address Defendants' assertion of facts, despite being notified of the consequences of failing to do so. (*See* Docs. 72, 74, and 75). Material facts set forth in that statement are therefore deemed admitted for purposes of summary judgment unless specifically disputed, and only to the extent supported by admissible evidence. SDIL-LR 56.1(f), (g). The Court takes those admitted facts as true. It draws reasonable inferences from the remaining admissible evidence in Plaintiff's favor.

The medical defendants object to Plaintiff's declaration as containing conclusions, speculation, and unfounded medical opinions; as lacking any disclosed expert or foundation for medical knowledge; and as containing hearsay and move to strike the same. Defendants' objections to Plaintiff's declaration are sustained in part and overruled in part, as set forth below.

Under Rule 56(c)(4), a declaration must rest on personal knowledge, set out facts that would be admissible, and show the declarant's competence. Affidavits state facts, not legal conclusions. *Greene v. Westfield Ins.* Co., 963 F.3d 619, 627 (7th Cir. 2020). The Court considers only trial-admissible evidence, FED. R. CIV. P. 56(c)(2), (c)(4); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000), and may apply those limits without striking the declaration wholesale. Legal argument in an affidavit may be disregarded. *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985).

Some of the declaration is proper. Plaintiff may describe events he observed, symptoms and functional limits he experienced, and statements by named defendants. FED. R. EVID. 602, 701, 801(d)(2)(A). That includes his transfer and intake, shoe requests and conversations with Defendants, the timing of later medical encounters, worsening pain and difficulty walking after the shoes were withheld, and Dr. Lochard's later approval of the shoes in his presence.

He may not offer opinions that require specialized knowledge. FED. R. EVID. 701, 702. He has no medical training and no disclosed expert. The Court therefore will not treat the declaration as proof of diagnosis, the standard of care, the adequacy of any examination, medical causation of lasting injury, or prognosis. Characterizations that the shoes were "medically required," that requests were denied "without proper examination" or for "unreasonable" periods, that "the damage … had already occurred," or that Defendants caused "permanent mobility impairment" and a present "need" for braces and walking aids are disregarded to the extent they state professional or legal conclusions rather than first-hand observation. Plaintiff may describe pain, swelling,

difficulty walking, and devices he in fact uses. He may not convert those observations into opinions on causation or permanent injury.

The Court will consider first-hand facts and party-opponent statements and will disregard legal conclusions, unfounded medical opinions, and unidentified-staff hearsay. *Greene*, 963 F.3d at 627; Pfeil, 757 F.2d at 862.

## IV. Factual Record[3]

### A. Marion County detention

Plaintiff was transferred from the Marion County Jail to the Franklin County Jail on October 3, 2022, and remained at Franklin County through the period relevant to the complaint.

Marion County intake records contain no documented left-leg injury, left-leg pain, foot drop, or gait deformity:

- A May 9, 2018 intake form answered "no" to the medical, dental, and psychiatric questions and did not mention a left-leg injury, pain, or foot drop. (Doc. 71-1, pgs. 22-24).
- Bookings on April 12 and April 19, 2019, likewise contained no reference to left-leg pain, injury, or foot drop. (Doc. 71-1, pgs. 13-21).
- A December 28, 2019 intake form indicated no gait deformities. (Doc. 71-1, pgs. 9-13).
- An April 1, 2022 intake form indicated no gait deformities and recorded a positive finding only as to breathing issues. (Doc. 71-1, pgs. 2-4).

[3] The following material facts are undisputed. To the extent there is a dispute, the dispute is noted and, for purposes of summary judgment, is interpreted in the light most favorable to the non-moving party, the Plaintiff. Plaintiff did not respond to Defendants' Local Rule 56.1 statements of material fact. Those statements are therefore deemed admitted to the extent they are supported by admissible record evidence. Fed. R. Civ. P. 56(e); S.D. Ill. L.R. 56.1. The Court considers the portions of Plaintiff's declaration that rest on personal knowledge or on statements of named defendants, and it disregards unfounded medical opinions, legal conclusions, and hearsay from unnamed staff.

During the Marion County detention, Plaintiff accessed the commissary on multiple occasions but obtained no Tylenol or ibuprofen. (Doc. 71-1, pgs. 45-73). He attests that he obtained and wore supportive shoes through the commissary and did not then have significant pain or mobility problems. (Doc. 76, pg. 7). He further attests that he typically avoided pain medications due to previously developing an addiction to prescription pain medication. (Doc. 75, pg. 7). Defendants dispute that any such shoes were medically necessary and point to the absence of any documented gait problem or medically indicated footwear in the Marion County records. (Docs. 71 and 73). For summary-judgment purposes, the Court accepts Plaintiff's account of his symptoms and of obtaining supportive shoes at Marion County.

**B. October 3, 2022 intake at Franklin County**

On October 3, 2022, Plaintiff completed a mental-health evaluation and medical history. The only "yes" answer on the medical history was to a special diet prescribed by a physician. (Doc. 71-2, pgs. 69-73). The form answered "no" to questions concerning emergency care and current medications and contains no reference to leg pain. (*Id*).

Plaintiff attests that he told processing staff he needed his shoes to support his leg and foot; that he was instructed to place the shoes in a property bin; and that he was told release required medical approval. (Doc. 76, pg. 6). Defendants dispute that he reported a medical need for the shoes and note that the contemporaneous forms do not record any such complaint. (Docs. 71 and 73). Interpreting that dispute in Plaintiff's favor, he so informed intake staff, and the shoes were placed in property pending medical approval.

**C. Complaints and medical encounters**

On October 4, 2022, Plaintiff submitted a sick-call request asking to be seen for nerve damage in his leg. (Doc. 71-2, pg. 40). A handwritten nursing note recorded that he had not been on medications at Marion County. (*Id.*).

From October 4 through December 28, 2022, Plaintiff complained to Lieutenant Skobel about leg pain and an alleged need for special shoes, both directly and through grievances dated October 6, 10, 27, 28, and 31, and November 16, 23, 24, 28, and 29. (Doc. 73-2; Doc. 77, pg. 6). Those complaints were followed by medical encounters on October 10, October 17, November 2, November 21, December 8, and December 16. (Doc. 73-2, pgs. 13-21).

Notes from those visits reflect ongoing complaints of nerve pain in the leg, requests for shoes Plaintiff alleged were medically necessary, and a request for a double mattress. (Doc. 73-2, pgs. 13-21). A medical history and health appraisal signed by Dr. Lochard on October 17, 2022, indicated no arthritis, joint, or mobility issues and reported only a history of breathing problems. (Doc. 73-2, pgs. 18-19).

On November 2, 2022, Plaintiff was seen for the "same problem from last 2 visits," described as "nerve damage," and asked to have his nerves checked. (Doc. 73-2, pg. 17). He complained that he was unable to walk up steps without pain. (*Id.*). Staff noted that at 1400 hours he was observed in recreation playing basketball, jumping and running. (*Id.*). No further intervention was undertaken at that time in part because of that observation. (*Id.*; Doc. 78-1). Range-of-motion exercise was prescribed on November 4. (Doc. 71-2 pg. 60; Doc. 73-2 pg. 17).

On November 21, 2022, Plaintiff reported that the pain in his leg was worse and that his knee was swelling. (Doc. 73-2 pg. 16). He requested special shoes and was advised that security must approve the request. (*Id.*). The examination recorded no physical findings other than vital signs, which were otherwise normal except for blood pressure of 142/84. (*Id.*). The knees were observed to be equal in size. (*Id.*). Notes indicate that security was informed that it was up to them whether to allow the requested shoes. (*Id.*).

On December 8, Plaintiff contacted the nurse directly regarding pain and swelling in his leg and foot and requested to see a doctor or specialist. (Doc. 73-2 pg. 15).

On December 16, examination revealed minimal swelling to the knee without swelling in the leg or foot. (Doc. 73-2 pg. 14). Plaintiff was observed ambulating without difficulty. (*Id.*). He was advised that he could purchase Tylenol at the commissary, to elevate the leg if swelling occurred, and to notify nursing staff if swelling increased. (*Id.*).

Dr. Lochard attests that he did not believe the requested shoes were medically necessary, based on Plaintiff's complaints, examination (including lack of swelling of the left leg or foot), and observation of Plaintiff's physical abilities (including continued participation in activities such as basketball). (Doc. 78-1). He further states that he eventually approved acquisition of the shoes on a non-medically-necessary basis, subject to approval by jail staff. (Doc. 78-1).

The Court considers Plaintiff's first-hand description of the symptoms he experienced and of the requests he submitted. Interpreting the record in his favor, he continued during this period to report worsening pain, swelling, and difficulty walking and to request supportive shoes.

### D. Release of the Shoes

Defendants' submissions are not aligned on when the shoes were provided. One account states that Plaintiff was allowed special shoes in connection with the November 21 encounter, but the record cited for that account indicates only that security was told the decision was up to them. (Doc. 73 pg. 4; Doc. 73-2 pg. 16). The medical chronology and jail file place a jail response on December 28, 2022, that Plaintiff would receive his shoes that morning, and Lieutenant Skobel arranged on December 28 for Plaintiff to continue using support shoes. (Doc. 71-2 pg. 38). Plaintiff attests that the shoes were withheld for an extended period while he submitted repeated requests describing increasing pain, swelling, and difficulty walking. Interpreting that conflict in Plaintiff's favor, the shoes were not released until on or about December 28, 2022.

## V. Discussion

### A. Claim 1 – Fourteenth Amendment Claim Against Nurse Harsey and Dr. Lochard

Even resolving factual disputes in Plaintiff's favor, no reasonable jury could find the medical defendants' response objectively unreasonable. After the October 3, 2022 intake and the October 4 sick-call for "nerve damage," medical staff saw Plaintiff on October 10, October 17, November 2, November 21, December 8, and December 16. They recorded his complaints of nerve pain and his requests for shoes and a double mattress. They prescribed range-of-motion exercise, advised commissary Tylenol and elevation, and addressed the shoe request. The contemporaneous findings do not describe an ignored, obvious medical need. The October 17 appraisal signed by Dr. Lochard listed no arthritis, joint, or mobility problem and noted only a history of breathing issues. On

November 2, staff recorded that Plaintiff had been observed in recreation playing basketball, jumping, and running, and they undertook no further intervention at that time in part because of that observation. On November 21 the knees were equal in size and the examination recorded no physical findings other than vital signs. On December 16 there was only minimal swelling to the knee, no swelling in the leg or foot, and Plaintiff was observed ambulating without difficulty.

Dr. Lochard attests that he initially concluded the requested shoes were not medically necessary, based on Plaintiff's complaints, examination including the absence of swelling in the left leg or foot, and observation of Plaintiff's continued ability to participate in physical activity. He later approved acquisition of the shoes on a non-medically-necessary basis, subject to jail-staff approval. Interpreting the later-approval dispute in Plaintiff's favor establishes only that Dr. Lochard approved possession of the shoes. It does not convert the earlier clinical judgment into a substantial departure from accepted professional standards, and it is not proof that the shoes were medically required or that any delay caused injury.

Moreover, to recover for delayed care a plaintiff must present verifying medical evidence that the delay caused some degree of harm. *Miranda*, 900 F.3d at 347. Plaintiff has none.

In essence, Plaintiff's claim rests on his disagreement with a conservative course of care. That is not a triable Fourteenth Amendment claim. *See Williams*, 937 F.3d at 942–44; *McClendon v. Lochard*, No. 19-CV-373, 2021 WL 3172982, at *8 (N.D. Ill. July 27, 2021).

Accordingly, Plaintiff's claim against Dr. Lochard and Nurse Harsey fails as a matter of law.

**B. Claim 2 – Fourteenth Amendment Claim Against Lieutenant Skobel**

The same objective-unreasonableness standard governs the claim against Lieutenant Skobel. *Miranda*, 900 F.3d at 352; *McGee*, 55 F.4th at 569; *Zemlick*, 164 F.4th at 1010. When a detainee is under the care of medical experts, non-medical staff may generally trust those professionals to provide appropriate attention. *Miranda*, 900 F.3d at 343; *McGee*, 55 F.4th at 569. An exception exists only if the official had reason to know that medical staff were failing to treat or were inadequately treating the detainee. *Miranda*, 900 F.3d at 343; *McGee*, 55 F.4th at 569, 573; *Zemlick*, 164 F.4th at 1012–13. Officers are not constitutionally obligated to override medical judgment unless they have that reason to know. This is so even when the detainee reports distress, and even if medical staff later prove to have been wrong. *McGee*, 55 F.4th at 573. There is no due-process right to have a non-medical officer veto medical judgment and deliver the item the detainee prefers. *Zemlick*, 164 F.4th at 1015. *See also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

From October 4 through late December 2022, Plaintiff complained to Lieutenant Skobel about leg pain and an alleged need for special shoes, both in person and through grievances. Those complaints were followed by medical encounters on October 10, October 17, November 2, November 21, December 8, and December 16. This is not a case in which Plaintiff was being ignored by medical staff. *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011); *Zemlick*, 164 F.4th at 1013. On the contrary, medical staff examined

Plaintiff, recorded function inconsistent with an inability to ambulate, prescribed conservative measures, and concluded that the shoes were not medically necessary. The November 21 notes advised that the decision was up to security staff. Interpreting the timing dispute in Plaintiff's favor, the shoes were not released until on or about December 28, when Lieutenant Skobel arranged for him to continue using support shoes.

These facts do not give a non-medical officer reason to know that medical staff were providing no meaningful care. Once medical staff classified the shoes as not medically necessary, Lieutenant Skobel was being asked to release property, not to override a medical decision that ignored an obvious medical need. A delay in releasing a non-prescribed item while Plaintiff continued to be seen, given exercise, and told to use commissary pain medication does not make the response objectively unreasonable. *Cobb v. Lake County Sheriff's Office* is closely on point. In *Cobb,* the court concluded that a non-medical official who denied a grievance after medical staff classified the requested intervention as elective, while other treatment remained in place, did not act objectively unreasonably. *Murray Cobb, Plaintiff, v. Lake Cnty. Sheriff's Off., Lake Cnty., Illinois, John D. Idleburg in his official capacity, Richard Clouse in his official & personal capacity, Nicholas Kalfas, Timothy Reidy, Jahaira Lopez, Wellpath, LLC, Nicholas Papanos, Kerry Ehlert-Donovan, Caroline Paull, Taryn Weiler, Ryan Sciame, Nicholas Fontana, & Baby Than, Defendants*., No. 1:24-CV-03707, 2026 WL 2546829 (N.D. Ill. Aug. 28, 2026), at *3–4. *See also Zemlick*, 164 F.4th at 1012–14 (lieutenant who did not independently override ongoing medical care did not act with objective unreasonableness).

Accordingly, the Court finds that Lieutenant Skobel is entitled to summary judgment as to this claim.

## VI. CONCLUSION

For the reasons set forth herein, the Motions for Summary Judgment filed by Defendants Stephanie Harsey, Hughes Lochard, and Anthony Skobel (Docs. 71 and 73) are **GRANTED**. The claims against them are **DISMISSED** with Prejudice. The Clerk is **DIRECTED** to close the case and to enter judgment accordingly.

**SO ORDERED.**

Dated: September 21, 2026

DAVID W. DUGAN
United States District Judge